2009-6002 Patterson v. The Office of Compliance May it please the court, good morning. I would like to address two points today. On page 6 of Petitioner's reply brief, Petitioner noted that the AOC and his claims allege that the AOC in retaliation for the Petitioner's opposition to matters made on Wednesday, a case filed by the CAA, filed a grievance policy and pursuant to that grievance policy and running through the course of the grievance policy, there were other violations and that was essentially the subject of the complaint that's in front of you. Now subject to a second complaint brought in front of the Office of Compliance, which was heard after remand from the Board of Directors on September 21st, the hearing officer, the same hearing officer in the initial case, stated to the court that she and everyone else except for the petitioner seemed to be the only, did not understand the basis, or did not understand the basis for the complaint. In the first case, I have a copy of the transcript, the relevant portions of the transcript for the court, if the court would like to receive them now. I just received the transcript from the September 21st, 2010 hearing in the second manor two days ago and I made copies of the relevant portions yesterday. Well, why don't you submit it to the clerk's office? All right, fine, Your Honor. Thank you. That you were there. So I have a copy to the oppose. I've given a copy to the present counsel. But in making that determination a couple of weeks ago that she did misunderstand the first case, which is the one before you, she was saying in effect that her decision in the first case was not necessarily based on the facts of the law that she finally understood were relevant in the first case, and that the decision in the second, by the Board of Directors in the second case, in the first case, was not necessarily because it was based on the hearing officer's decision. It was not necessarily in accord with the facts and the law that was relevant again to the first case, because she openly admits she did not understand the first case on which her decision rested. So we're faced with an injunction here where the court can take judicial notice of the fact that she states she did not understand that first case. And so we're left in the position now to argue a matter that's in front of the court today on something that might not necessarily have the appropriate foundation. It might be arbitrary and capricious and abuse of discretion and otherwise and not in accordance with the law. As I understand the record, there were four different complaints that were filed. There were four different complaints, but she still did not understand the nature of the four different complaints. That is the problem with it. With all effort, I attempted to get the hearing officer to understand, and she just did not understand until we went through a two-hour long summation, so to speak, in the second hearing, which was held September 21st. And filed a third complaint after that? No, there was no third complaint filed. We only have two complaints necessarily in the Office of Compliance, or two case numbers in the Office of Compliance. This was pursuant to a second case number, totally separate and apart from the first case number, but which grew out of the first case because it dealt with violations of the procedures of the Office of Compliance in the first case. So everything is intertwined with the first case. There has been no decision on the second case number that's in front of the court. I have opportunity to file a written document in support of judgment for the complainant in the second case on October the 21st. So, but what I'm saying- What's on appeal to us? My appeal to you is, I don't have the case number in front of me and I apologize to the court. It's on appeal to you, 07-AC31-RP. Counsel, I thought the issue on appeal to us was whether the petitioner left standing in this case. That is one of the issues. Petitioner was forced because the hearing officer did not explore or even deal with the issues dealing with the violations in the grievance policy to deal with what we felt we had to answer in terms of a hearing officer's decision in the first case, one of which was standing. And I would like to address- You have to be able to establish an order of standing as a jurisdictional issue, and therefore one of the first things we would need to address. So you would have to be able to convince us that there existed standing for the discrimination complaint that has been filed. Well, it was a retaliation complaint. It says otherwise discriminate in the section of the code 2 U.S.C. 1317. But the position of the hearing officer and the board and the position of the architect of the capital underneath, since they are not a party to this appeal, was the fact that because the complainant was not a protected member or an individual protected under 2 U.S.C. 1311A, which deals with those categories of members who are protected by a non-minority status of one sort or another. But in terms of retaliatory, the retaliation statute, there is no designation that you have to be somebody who is in a non-minority status or someone who is protected by that which is in 2 U.S.C. 1311. But what is the protected act? There has to be a protected act before there could be a- The protected act, we felt, was after he was denied promotion and because of violation of the promotion policy, he went to the supervisor of the Senate office buildings and said, if you were to do this with somebody who would be in a non-minority status, you could be brought up on discriminatory and or retaliatory charges. That is the protected act. That is protected opposition. It doesn't matter that there was no one in a non-minority status who was involved in that promotion process. But, and my one, wasn't the case that I'll say to be a protected act, he has to have a reasonable belief that there is discrimination. Not that there could be, but that there is. If it happens to him, if he sees the violation of the grievance process, and if he sees that he, as a non-minority applicant, has violations against him, isn't it natural to think that if you do this against me and you believe- Let's make sure that we're on the same page, because maybe I misunderstand the facts. As I understood the facts from your brief, Petitioner applied for a job. He is a Caucasian individual, and all of the other applicants for the job were likewise Caucasian individuals. There were no differences in race otherwise alleged. Is that right? That is correct. And the argument, as I understand it, is the process is discriminatory, because had there in fact been a minority, they would have been given preference. But in the process as applied to Mr. Patterson, there was no minority present, and there was no allegation that he was given lesser preference. That does not mean, Your Honor, that a person cannot make an opposition to something that he sees that could be. If it could happen to him, being a non-minority, what you're saying is, in effect, and what the Board of Directors is saying, is that we can wipe out an entire group, an entire population, who comes forward and recognizes the potential for discrimination and retaliation because it's happened to him, and we cannot verbalize. But you're saying because it's happened to him. That's the problem. I don't see the because it's happened to him. Maybe it has in some other context, but the facts presented to us are that all of the applicants were of the identical race. But because the violations happened to him, because the violations happened pursuant to the process. What violations? The violations in the hiring process. How was the hiring process violated? The individual who was supposed to be the selecting officer no longer was the selecting officer. It was done by an alleged Democratic voice saying that it's going to be Democratic of the three people in it. So he did not get selected because the selecting officer was no longer the selecting officer. And the superintendent of the Senate office buildings came in and said, how do you vote? How do you vote? Okay. So I think I maybe understood your main arguments on appeal to be related to the discrimination. But what you're saying now is that your argument is that it was an abusive discretion to allow a group of people to make the selection decision rather than a single individual. That has nothing to do with the discriminatory practices that you allege exist or may exist, have the potential to exist. Right? Is your argument now that the agency abused its discretion by allowing the three people to make the selection as opposed to one? If I might say this, that was what precipitated the grievance. He then went through the grievance process and he was not given the entitlement. He was not given the procedures he was entitled to pursuant to the grievance process, which took place after he voiced his opposition that this could happen to anyone, that you would be in violation of the CAA, the Congressional Accountability Act, if you did this with somebody who was in a minority status. So he's not bringing an action in the first place about the hiring process. He's bringing an action in the first place for violation of the grievance process, which is after I spoke to you and after I told you that you would be in violation of the CAA, of the Congressional Accountability Act, you are now, what happens and what precipitates is violation of the grievance process. That's what at least six counts are in any of the complaints, subsequent complaints, the four amended complaints, so to speak. So after he makes this announcement to the superintendent of the Senate office buildings, then there become violations in the grievance process. That is what he brought as retaliation, not discrimination, but retaliation. Now if you say, because there is nobody there, he cannot voice his opposition that you can do X, Y, and Z. When you are quieting, you are shutting up, you are depriving an entire group of the population from being able to voice their opposition to retaliation. Then he says, what's perfectly out there, he says, you do this to me, but if you do it if they're an African American, if they're a gay person, if they're a woman, if they're an ADA person, but that person can bring the action. That's opposition. You don't necessarily need a hypothetical or a speculative. What they did in the grievance process was not hypothetical or speculative. It happened to them. It happened to him shortly after and within the process of making his opposition known of the fact that if you do the same thing to other people who are in a minority status, then if you do it to me, then you can be brought up against with discriminatory and retaliatory charges. But the fact that we feel he was retaliated on against because he voiced his opposition, whether or not he was a, quote, quote, protected member as it reads, even though as a Caucasian he's still protected, you're quieting him. You're depriving Congress of the intent Congress wanted when it said there shall be no discrimination or retaliation. Mr. Lee, we're going to rebuttal time. Do you want to say something? Ah, yes, sir. We have about two minutes left. And you wish me to submit this to the first office? To the first office. Thank you. The court. On the remand issue, there has been contention that the hearing outs in this case misapprehended the remand issue in the case. There is no grounds for remanding this case. She understood perfectly well what the statutory issue was. And that issue was whether or not Mr. Patterson engaged in protected activity when we opposed the promotion process. Well, it does suggest that there is a statement in this hearing transcript where she said she didn't understand. So what is it that she is saying she didn't understand? What she may not have understood is the fact that the issue before the Inspector General in this passage that Mr. Lee was referring to, the second case involves an allegation that the Inspector General, who is investigating this promotion process, at the end of the process is not part of our case, but is Patterson's too. The allegation is that the IG, when he found out that this case was in litigation before the OOC, he aborted his investigation on the theory that we have the cases over here before the OOC, so I'm not going to pursue my investigation of the promotion process. Now, the issue before the OOC was a statutory issue, and there was a lot of overlap, but it was slightly different from the issue that was before the IG, which had nothing to do with the Sydney Congressional Accountability Act, which was purely a contractual grievance matter. There was some overlap there. So she said the IG wasn't clear about that difference, but she was clear when she was presiding over the statutory issue in this case. Whereas Mr. Patterson was engaged in protected activity. Let's talk about that. Suppose that Mr. Patterson had been in a selection process to invent someone who got preferential treatment about him due to some sort of race or other related issues. Would he then, by reporting his beliefs that that amounted to discrimination against him directly, would that have been a protected act sufficient to give him standing in this case? If there were reasonably, objectively reasonable grounds for believing that the OOC was discriminating based on race, the answer would be yes. Okay, so here's the difference. What I understand below, to have been focused on, was the fact that while this was not a mixed race selection process, if he was discriminating, what you just told me the test was, is did he have reasons to believe the agency was discriminating? If the agency has a policy wherein it gives preferential treatment to people on the basis of race, why doesn't he have standing to bring that up? He certainly would have standing. He certainly would have. And nothing said by the hearing officer or the board or us in our business would ever question that clear proposition, absolutely. Isn't that what he's alleging? No, he's not alleging that. There was no basis whatsoever for any kind of claim in this case that the OOC was discriminating, had discriminated in the past, was discriminating now, or will discriminate in the future. What he did say, he actually is claiming to think the agency was not, but the agency is engaged in the practice made unlawful by the CAA. His claim was it could, if it used this same process, the hiring process, it could considerably in the future use that process to discriminate against somebody in a protected class. If in fact there was a member of the protected class within that selection process in the future. Yes, the agency could, but that's not where the statute doesn't extend protection to anybody who claims that the promotion and hiring process somewhere down the line might considerably, any promotion or hiring process can considerably be used to discriminate as a clerk from discrimination can be abused. Is it correct to say that basically in his selection process there was no member of a protected class? That's correct, your honor. His allegations are that if there were a member of a protected class in the future, there would be another selection process that the agency would abuse its discretion and violate the law in that selection process and the subsequent selection process. It could be predisposed if there was some showing of a likelihood that this would happen in the future. But in this case, the AOC, there is not a shred of evidence that the AOC has ever in the past, it is now, or at any time in the future will actually engage in any kind of discrimination. But what would be his injury during his selection process to provide standing? He would have standing not only to object to discrimination against him personally.  His selection process. He would also have standing if he were aware of a policy of discrimination against any other protected class. He would also have standing to oppose that. The statute says any covered employee who opposes any practice beyond lawful is protected against retaliation. That's not what we have here. There has to be some showing of a predisposition of some comments made by supervisors, some action in the past, some threat rationing in the future to hang your head out. And here's the reason. If it was sufficient for Mr. Patterson to allege only that it's possible that there would be some discrimination in the future, that would mean that every personnel policy, every personnel policy and certainly every hiring and promotion policy can be abused. So that would mean that any employee who opposes any personnel policy would be protected. It would violate the statute. The statute says retaliation against employees who oppose a practice made unlawful by the CAA. There is no evidence of any violation, any potential violation or present violation of the CAA. So correct me. Explain to me exactly what the facts are that Mr. Patterson said amounted to a potential discrimination in the selection process. What exactly was his allegation? His allegation was that there could be future discrimination against members of a protected class. Could be based on what? Based on anything, based on race, gender, age. No, I mean, but did he point to some practice of the agency, some policy, anything at all that would give some foundation for a belief that the agency could in the future discriminate? The answer is an emphatic no, Your Honor. There is no citation to the record in any one of their beliefs. To anything in the record, they would even remotely support the existence of anything that would give any hint that the AOC is or would, was discriminating or would be discriminating. If I, if it was sufficient that an employee could say, we don't have any evidence of any discrimination past, present, or future. Well, down the line, you could use this hiring procedure to discriminate if you were so inclined. There is no evidence that the AOC is so inclined. If this kind of allegation was sufficient to get protection against retaliation, that would mean all that an employee would have to do is say, we have a promotion policy. Promotion policies are inherently susceptible to discrimination if the employee is so inclined. So you think maybe this would sort of be like if this were a safety issue. A company was fully in compliance with all regulations. And if one of its employees says, if you don't comply with the regulation, down the line, somebody could get hurt because of these safety problems. Is that the analogy you would draw here? Yes. A company that's in full compliance otherwise, not just full compliance in terms of they haven't actually committed a violation yet, but there's not even any evidence that there's even the possibility that they're intending to or anything. That is our case. There is no citation to the record. There is nothing in the record. Mr. New does not claim there's anything in the record, that would suggest that at any time in the future, it is seen as discriminating. But my point is, this would open up to a protected status. Any employee who said, I oppose your personnel policies. Because any personnel policy is subject to abuse, could be abused, discriminated sometime in the future. But there has to be something to hang your head on, that at least shows a predisposition, some kind of likelihood, if the employee in the future is going to do something bad. As far as this record is concerned, the AOC is as squeaky clean as it could possibly be. The other thing that rises is, Mr. Patterson's complaint, that, aha, maybe they'll learn some place where you could do it. But there's no suggestion that the AOC would ever do that. That can't be enough to support the existence of protected activity. If that procedure implies protecting, if he reasonably believes that his employer is engaged in a practice made unlawful by the CIA, there is that reasonable belief. My opponent's briefs, if you'll notice, do not even allege there is a reasonable basis for believing. There's not even an argument that there's a reasonable basis in this case. His argument is that it's enough that I sincerely believe that this could be used to discriminate somewhere down the line. That can't be enough. Now, I will point out about the abuse of military discretion. The problem Mr. Patterson has here is that the OAC, the CIA does not confer jurisdiction on the OAC to ensure that agencies are complying with their internal procedures. That's, without saying it's some kind of a super review board, it's only when those procedures violate prohibitions contained in the CAA where the CAA's jurisdiction comes into play. Now, this case is really about a grievance that Mr. Patterson lost. The one trying to shoehorn this case into a federal case under the CAA by alleging process violations. Well, if there were process violations, there still have to be process violations that somehow allege and involve acts prohibited by the CAA. It's not enough that they didn't comply with them. However, and I believe, I want to make it very clear that there may be a departure from the customary procedure in this case. There are very good reasons for departing. And the personality of the service chapter 335 made it clear that managers have an obligation to make sure that the hiring and promotion process is, quote, fair and equitable. And the supervisor, one of the high ranking managers of the OAC with over 3,000 employees said, wait a minute, we've got two supervisors who have a toxic relationship. One is the selecting official and another one is somebody with an immediate and direct interest in who is selected for this process because that supervisor sometimes uses employees in the selecting official's branch. So he said, we're going to make sure that this is a fair process. I'm going to sit on the panel. The two of you are going to sit on the panel and basically behave yourself. And that's what happened. And the selecting official actually wound up ranking the selection. He claimed that he reluctantly made the selection. But nonetheless, he made the selection. And his suggestion that he was coerced into making the selection is just frankly nonsense because a couple of months before, in the same situation, where this other supervisor and the superintendent had said, we want you to come in with this other fellow over here. And this selecting official, Supervisor Adkins, said, no, I want my man. And he went ahead and selected his man. This time around, two months later, he said, I'm not going to block this system. Everybody else wants Mr. Reese and not Mr. Patterson to be selected. I'm going to go along with this. And he testified against him and made the selection. So there were no process violations. So, you know, the substantial evidence test, is what I'm going to say here. We submit that there is substantial evidence to support the board's finding that there was no reasonable basis for Mr. Patterson to believe that the AOC had violated the statute. Thank you, Mr. Walker. Your time is up. If it please the court, the reason why there are no citations to the hiring process is because the hiring process was not the substance of the complaint that was brought in the Office of Compliance. The substance of the complaint that was brought in the Office of Compliance was the violation of the grievance process, which occurred after he made his opposition, what we call opposition to the fact. It had nothing whatsoever to do with the hiring process. It had to do with the violations in the grievance process. There are six counts in the original complaint in this case that dealt with violations of the grievance process. If it please the court, it may please the court, everybody wants to concentrate on the hiring process. The hiring process was not some substance of the complaint and the request for counseling in the Office of Compliance. It was violations in the grievance process, which occurred post his statement to the superintendent saying you can't do this if someone were of a minority status. It has nothing whatsoever to do with the hiring process. That's why there's no citations to the hiring process. Subsequent to his statement, he filed four or five grievances, two or three informal, two formal, and he was denied the process that existed, the internal process, and he attributes that denial of his entitlement under the internal process to his statement that was offered in opposition to matters made unlawful. There is a nexus between those two things. That is what the hearing officer determined at last I understand what that first case was about. I can't stress enough, it had nothing whatsoever to do with the hiring process and the violations that he felt occurred. It had to do with the violations of the grievance process, which he feels was causally connected to his statement about what could occur to the AOC if, in fact, there was somebody of a minority status. It's incredible how much time has been devoted to the hiring process at both the hearing stage and the summary judgment stage, when really it's the grievance process that he's saying that he was denied his entitlement to. It was not the hiring process. The hiring process was the sum and substance of his grievance that he was denied matters pertaining to his grievance, which was what he said. Thank you. Case is submitted. Thank you.